**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 12 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARIA ROSARIO MARTINEZ-
LEGARDA,

    Defendant-Appellant.

No. 03-2283
(D.C. No. CR-03-433-BB)
(New Mexico)

---

# ORDER AND JUDGMENT*

---

Before **SEYMOUR**, Circuit Judge, **HOLLOWAY**, Senior Circuit Judge, and
**MURPHY**, Circuit Judge.

---

Maria Rosario Martinez-Legarda pled guilty to transporting illegal aliens,

in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), § 1324(a)(1)(A)(v)(II), and §

1324(a)(1)(B)(i), reserving her right to appeal the district court's prior denial of a

---

*After examining the briefs and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore submitted without oral argument. This order and
judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, or collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the
terms and conditions of 10th Cir. R. 36.3.

suppression motion. She contends the stop of her vehicle was not supported by

reasonable suspicion and violated her rights under the Fourth Amendment. We

disagree, and therefore affirm.

The district court found the following relevant facts:

On Monday, December the 16th, 2002, United States Border Patrol Agent Michael Fiorita and Agent Lisa Crouse were on duty patrolling New Mexico Highway 26. Earlier, before beginning patrol that evening, they [received] look out reports [from investigators in the field], [specifically] two agents reporting that aliens were being smuggled around the checkpoint on Interstate 10 to the west of . . . Las Cruces, New Mexico, and that large sports utility vehicles bearing Texas license plates registered to the El Paso, Texas area were being used to smuggle the aliens avoiding the checkpoint on Interstate 10 west of Las Cruces.
. . . .
At around 3:00 a.m. . . . , Agent Fiorita was driving a marked border patrol vehicle which was a sports utility-vehicle type in an easterly or northerly direction on State Highway 26 with Lisa Crouse as his passenger. Around 3:00 a.m. the traffic was very light. At approximately mile marker 16, Agent Fiorita observed a Suburban, which is a large sports utility vehicle, westbound or headed in the opposite direction in somewhat of a southwesterly direction. It had Texas license plates both on the front of the vehicle and on the rear of the vehicle, and as he passed it, Agent Fiorita estimated that it was traveling at a normal rate of speed in an area where the speed limit was 65 miles per hour . . . .
As the vehicles passed each other, Agent Fiorita observed that a female was driving the Suburban and . . . immediately as they passed, . . . the brake lights came on briefly on the Suburban, but there was nothing in the roadway that would indicate a reason for applying the breaks . . . . In addition, as Agent Fiorita passed the Suburban, it appeared to him that the Suburban was riding low at the rear . . . .
Agent Fiorita immediately made a U-turn and proceeded westerly or southwesterly on Highway 26 trying to catch up with the Suburban, but observed that it had significantly increased its speed to

approximately 80 miles an hour. By driving in excess of 80 miles per hour, Agent Fiorita was able to catch up with the Suburban and follow it at a speed of 80 miles an hour for some distance. While following the Suburban, he was able to determine the information on the license plate, which he called in, and received back a report that the license was registered to a person residing in the area of San Elizario, Texas, which is in the El Paso, Texas area.

He also received information that according to a 72-hour lane check, the vehicle had not crossed the border from the Republic of Mexico within the preceding 72 hours. In Agent Fiorita's experience, it would be unusual for a vehicle whose travel originated in the El Paso, Texas area to travel north on Interstate 25, and then head back west on Highway 26 instead of simply turning onto Interstate 10 at its junction with Interstate 25, which is just south of Las Cruces because it would take approximately an hour and a half longer to reach the same point on Interstate 10 by going north on Interstate 25 and then down Highway 26 to its junction with Interstate 10, as opposed to simply going directly onto Interstate 10. In addition, it seemed unusual to Agent Fiorita that a vehicle originating in the El Paso area would take the route north on [Interstate] 25 and then west on Highway 26 in the early morning hours around 3:00 a.m. because there were essentially no services on Highway 26, whereas, there were a number of services on [Interstate] 10 . . . if needed. Also, in Agent Fiorita's experience, most people drive Interstate 10 westbound from trips originating in the El Paso, Texas area instead of taking the more circuitous route of going north and then back down southwestward to Interstate 10.

. . . .

Agent Fiorita pulled around to the . . . left side of the Suburban and traveled adjacent to it for approximately a quarter of a mile or 15 seconds . . . . [H]e observed that the driver was a female, who did not look at him throughout the time that the vehicles were side by side for about 15 seconds. This is contrary to his experience in that normally when he is passing people in that fashion, they turn and look at his vehicle. Instead, the driver had a rigid, fixed forward orientation of her head and never turned to look at him. In addition, the driver would not make eye contact with him, as in his experience, he would expect of drivers who he was passing or who he was driving beside for some distance. . . . As Agent Fiorita pulled beside the Suburban, it slowed from the speed of approximately 80 miles per

hour to a speed within the speed limit. Agent Fiorita then . . .
stopped the vehicle.

Rec., vol. III, at 99-104.[1]

"Reviewing a ruling on a motion to suppress, we accept the trial court's findings of fact unless clearly erroneous, . . . [but the] ultimate determination of reasonableness under the fourth amendment is . . . a conclusion of law that we review de novo." *United States v. Venzor-Castillo*, 991 F.2d 634, 636 (10th Cir. 1993) (citations and quotations omitted). Ms. Martinez-Legarda only takes issue with the district court's legal conclusion of reasonableness. Aplt. Br. at 7.

Whether an officer had reasonable suspicion sufficient to justify a stop depends upon the totality of the circumstances. *United States v. Guillen-Cazares*, 989 F.2d 380, 383 (10th Cir. 1993). The Supreme Court has outlined a nonexhautive list of factors relevant to the reasonableness of stops:

> In determining whether there is reasonable suspicion to stop a car in the border area, officers may consider any number of factors, including: (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the

---

[1]The court also noted there were two different routes drivers from the El Paso, Texas area could take to avoid check points on Interstate 10. One of these routes included heading north on Highway 25 and then southwest on Highway 26, as Ms. Martinez-Legarda appeared to be doing. Rec., vol. III, at 98-100.

appearance that the vehicle is heavily loaded. Additionally, an "officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling."

*United States v. Monsisvais*, 907 F.2d 987, 990 (10th Cir. 1990) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975)).

In relation to these factors, the district court found the route upon which Ms. Martinez-Legarda was traveling to be one of two possible routes for avoiding the border patrol checkpoint on Interstate 10. At 3:00 a.m., when Agent Fiorita first encountered Ms. Martinez-Legarda's vehicle, there were "essentially no services" on the highway on which she was traveling, "whereas there were a number of services available on [Interstate] 10." Rec., Vol. III, at 102. The encounter took place approximately fifty miles north of the U.S.-Mexico border. Agent Fiorita was an experienced border patrol agent with specialized "training in the detection of factors suggesting the transportation of concealed aliens or contraband." *Id.* at 103-04. Upon encountering Agent Fiorita, Ms. Martinez-Legarda was traveling at approximately sixty-five miles per hour. As Agent Fiorita passed, she tapped her breaks, although nothing in the road appeared to cause this action. When Agent Fiorita made a U-turn to follow her, she increased her speed to approximately eighty miles per hour. When Agent Fiorita drove next to Ms. Martinez-Legarda for approximately fifteen seconds, she appeared stiff and did not make eye contact with him or even glance in his direction. This behavior

was "contrary to his experience in that normally when he is passing people in that fashion, they turn to look at his vehicle." *Id.* Most significantly, in the hours prior to his interception of Ms. Martinez-Legarda, Agent Fiorita received reliable information from his own agency that "large sports utility vehicles bearing Texas license plates registered to the El Paso, Texas area were being used to smuggle aliens avoiding the checkpoint on Interstate 10." *Id.* at 99. Ms. Martinez-Legarda's vehicle and geographic location fit this profile. Finally, the district court credited Agent Fiorita's assessment that Ms. Martinez-Legarda's vehicle was riding low. These circumstances, viewed in their totality, gave rise to reasonable suspicion justifying Agent Fiorita's stop of Ms. Martinez-Legarda.

Ms. Martinez-Legarda recognizes the Supreme Court's disapproval of a "divide-and-conquer analysis" of facts supporting reasonableness. Aplt. Br. at 14 (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). She nevertheless employs exactly this sort of attack on the district court's denial of her motion to suppress. Acknowledging that any one of the above facts *alone* would not be sufficient to support the district court's ruling, we decline Ms. Martinez-Legarda's invitation to assess each factor in isolation.

On the other hand, we do accept, and therefore address, Ms. Martinez-Legarda's argument that an officer's reason to believe the vehicle subject to a stop has come from the border is a "vital element" in the totality-of-the-

circumstances analysis. Aplt. Br. at 14. According to Ms. Martinez-Legarda, her location fifty miles north of the border and her traveling towards instead of away from the border significantly undermine any suspicion that she had, in fact, come from the border. However, a distance of fifty miles is not so far from the border as to render unreasonable the notion that a vehicle originated at the border. *See, e.g.*, *Venzor-Castillo*, 991 F.2d 635, 638 (location 235 miles from border will not support stop); 8 C.F.R. § 287.1(a)(2) (2003) (location within 100 air miles from any external border is reasonable distance within which border patrol may make warrantless stops). Ms. Martinez-Legarda's southwest travel towards the border is also relevant to the analysis. But this fact is undermined by the intelligence report Agent Fiorita received. The indication that a vehicle much like Ms. Martinez-Legarda's was smuggling undocumented persons and attempting to avoid the Interstate 10 checkpoint made her appearance at the location and in the direction she was traveling far more suspicious than would ordinarily be the case.

Stops of the sort at issue here will be upheld "if they [are based on] specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Brignoni-Ponce*, 422 U.S. at 884. Sufficient articulable facts and rational inferences undergirded Agent Fiorita's stop of Ms. Martinez-Legarda.

We **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge